69881. TRACY v. CREDIT BUREAU, INC., OF GEORGIA.
(330 SE2d 921)

CARLEY, Judge.

The instant case arises from the fact that appellant-plaintiff herein was named as the defendant in a civil action filed in the State Court of DeKalb County in 1980. On June 19, 1980, a default judgment in the principal amount of $345 was entered against appellant in that action. Thereafter, appellant moved to set aside the default judgment, and on August 28, 1980, the trial court entered an order, with the consent of the plaintiff in the action, granting appellant's motion. On the same day, the plaintiff filed written notice that the action against appellant was dismissed with prejudice.

Some weeks later, appellant applied for but was denied credit. He was told that information supplied by appellee-defendant consumer reporting agency had been considered in connection with his unsuccessful application for credit. Appellant thereupon telephoned appellee. At that time, appellee's credit report indicated that there was an outstanding $345 judgment against appellant. According to appellant, he protested to appellee that this information was inaccurate, and explained why. After this telephone conversation, he also sent a mailgram to appellee demanding a "correct credit report showing the judgment against [him] . . . to be set aside and dismissed. . . ." In response to appellant's protests, an employee of appellee called the clerk's office of the State Court of DeKalb County. According to appellee, its employee was told that the judgment against appellant had been satisfied. Based upon this telephone conversation with the clerk's office, appellee then issued a new credit report indicating that a $345 judgment against appellant had been "satisfied."

In June of 1982, appellant filed an application for issuance of a credit card. The application was not approved and appellant was informed that this adverse credit decision was based upon two grounds, one of which was "[g]arnishment, attachment, foreclosure, repossession or suit, collections, judgment." Appellant was also informed that the decision to deny his credit card application had been based "[a]t

least in part on information obtained in a report from . . . [appellee]. . . ." This report issued by appellee proved to be that which contained the information that a $345 judgment against appellant had been "satisfied."

Appellant then instituted the instant action against appellee, alleging that the credit report was erroneous and asserting appellee's liability for damages pursuant to the Federal Fair Credit Reporting Act (FFCRA), 15 USCA § 1681 et seq. Appellee answered, denying the material allegations of the complaint. After discovery, appellee moved for summary judgment. A hearing was held and the trial court granted appellee's motion on the ground that its credit report on appellant was "substantially accurate." Appellant appeals.

1. The FFCRA provides for the recovery of damages, court costs and attorney fees against a consumer reporting agency that has failed to comply with any requirement imposed upon it by the statute. "[T]he remedies provided by the Act are of a federal statutory nature, and therefore any right to relief in the form of damages is not to be determined by state court decisions . . . ." *Thomas v. Equifax, Inc.*, 142 Ga. App. 422, 423 (236 SE2d 154) (1977). The relevant statutory provision in the instant case is 15 USCA § 1681e (b): "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." This provision does not purport to create automatic liability merely because inaccurate information is contained in a credit report. Liability attaches only if the inaccuracy in a report is the result of a failure to follow reasonable procedures to assure the maximum possible accuracy of the information contained therein. See *Thompson v. San Antonio Retail Merchants Assn.*, 682 F2d 509 (5th Cir. 1982). However, there is no need to inquire into the reasonableness of a credit reporting agency's procedures if it is demonstrated at the outset that the report in question is in fact true. See *McPhee v. Chilton Corp.*, 468 FSupp. 494 (D. Conn. 1978). In order to pursue a cause of action predicated upon the FFCRA, the credit report sought to be attacked must be inaccurate. *Lowry v. Credit Bureau of Ga.*, 444 FSupp. 541 (N.D. Ga. 1978).

Appellee asserts, and the trial court held, that summary judgment was proper because the reported information that there was a satisfied judgment against appellant was "substantially accurate." This ruling thus foreclosed any consideration of the reasonableness of the procedures followed by appellee in compiling the report. Appellee, however, has cited us to no federal decision explicitly articulating that pursuit of an FFCRA claim is foreclosed in cases where the contested information is shown to be merely "substantially" accurate. In both *Middlebrooks v. Retail Credit Co.*, 416 FSupp. 1013 (N.D. Ga. 1976)

and *Austin v. Bankamerica Service Corp.*, 419 FSupp. 730 (N.D. Ga. 1974) the contested information contained in the credit report was factually correct *in its entirety*. In *Middlebrooks*, the credit applicant had been arrested; in *Austin*, the applicant had been named as a defendant in a lawsuit. The *accuracy* vel non, rather than the substantial accuracy of this information, was upheld over contentions that the report should *also* have included further explanatory details.

Thus, these cases do not endorse a general proposition whereby a consumer reporting agency can avoid an FFCRA claim merely by demonstrating that, on the basis of other unreported facts, the specific credit information that is actually contained in a report is "substantially accurate." They stand only for the proposition that if the specific credit information that is actually reported is itself factually accurate, the report does not become inaccurate and actionable simply because a more detailed explanation of the reported fact might have been but was not included.

The ultimate focus of the FFCRA is upon the dissemination of credit *information*. Accordingly, it is the accuracy or inaccuracy of the credit information actually contained within the four corners of a report disseminated to others that should be controlling. The credit information actually appearing in the report is used by those to whom it is disseminated to make an objective decision whether to extend credit. The information in a report should likewise be considered objectively, as either accurate or inaccurate on its face. Whether, in the subjective opinion of the applicant or the agency, the report is "substantially" accurate or inaccurate based upon unreported information is irrelevant. "Otherwise, it would seem that a consumer reporting agency could report that a person was 'involved' in a credit card scam, and without regard to this section fail to report that he was in fact one of the victims of the scam. This result cannot have been contemplated under the Act. . . . [S]ection 1681e (b) of the Act, fairly read, would apply to consumer reports even though they may be technically accurate, if it is shown that such reports are not accurate to the maximum possible extent." *Alexander v. Moore & Assoc.*, 553 FSupp. 948, 952 (D. Hawaii 1982).

Having held that the proper standard for determining whether an FFCRA case may proceed to the stage of investigation into the reasonableness of the procedures followed by a consumer reporting agency is the actual rather than the substantial accuracy of its report, we turn to the issue of whether appellee's report on appellant meets this standard. The question then is whether the report that there was a $345 judgment against appellant that had been satisfied was in fact accurate information. We have not been cited to any federal FFCRA decisions dealing with the precise issue of the accuracy or inaccuracy vel non of the reported existence of a satisfied judgment. Our own

research has found none. Accordingly, "it becomes the duty of this court to 'determine the question by the exercise of its own judgment, enlightened by the best available authorities.' [Cit.]" *Seaboard Air-Line R. v. Brooks*, 151 Ga. 625, 627 (107 SE 878) (1921).

There is no question that, prior to August 28, 1980, there existed a default judgment against appellant for $345. However, on that day, the trial court granted a motion to set that judgment aside. "When a default judgment has been granted and is then set aside under [OCGA § 9-11-60], the case returns to the posture it occupied prior to the default judgment. . . ." *Bank of Cumming v. Moseley*, 243 Ga. 858 (257 SE2d 278) (1979). "[T]he granting of a motion to set aside and the reinstating of the case in the trial court leaves the case pending in the trial court. . . ." *Wachstein v. C & S Nat. Bank*, 142 Ga. App. 23 (234 SE2d 828) (1977). Thereafter, the plaintiff in the then-pending action filed a written notice that the action against appellee was dismissed. "That being the case, no claims remained upon which the court could [enter] judgment." *Moore v. McNair*, 145 Ga. App. 888 (245 SE2d 25) (1978). Accordingly, it follows that, as of August 28, 1980, there was no judgment against appellant in existence, and no pending litigation that might even result in a judgment.

Appellee objects to this analysis, relying upon evidence in the record that it was only in consideration of appellant's payment of $345 that the plaintiff consented to setting aside the judgment and dismissing the litigation. On the basis of this evidence, appellee asserts that the judgment against appellant was, in effect, satisfied by his payment of $345. However, it is the legal result of the plaintiff's actions, not the consideration therefor, that controls. Prior to August 28, 1980, the plaintiff had an enforceable judgment against appellant. "A judgment is 'the official and authentic decision of a court of justice upon the respective rights and claims of the parties to an action or suit therein litigated and submitted to its determination.' [Cit.]" *Oxford v. Generator Exchange, Inc.*, 99 Ga. App. 290, 293 (108 SE2d 174) (1959). The plaintiff was under no obligation to bargain away its status and legal rights as a judgment creditor, yet did so. With the plaintiff's loss of status as a judgment creditor, there was a corresponding loss of appellant's status as a judgment debtor. It is immaterial whether the consideration for this result was paid before or after August 28, 1980. As a matter of law, there simply was no judgment against appellee in existence as of that day.

Appellee reported that there existed a judgment against appellant which had been satisfied. This was inaccurate information. Genuine issues of material fact remain regarding the reasonableness of the procedure that appellee followed in including this inaccuracy in its report on appellant. The trial court erred in granting appellee's motion for summary judgment on the ground that the report was "sub-

stantially accurate."

2. Remaining enumerations of error need not be addressed.

*Judgment reversed. Sognier, J., concurs. Birdsong, P. J., concurs in the judgment only.*

DECIDED APRIL 30, 1985.

*W. Cary Herin, Jr., T. Gordon Lamb*, for appellant.
*Caryn R. May*, for appellee.